David ROBINSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1101–CR–13.

Court of Appeals of Indiana.

Oct. 5, 2011.

Suzy St. John, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

David Robinson appeals the revocation of his probation.

We affirm.

### ISSUE

Whether the trial court erred by admitting into evidence a probable cause affidavit that contained multiple levels of hearsay.

### FACTS

On May 16, 2010, the State charged Robinson with battery, a class A misdemeanor. On September 7, 2010, Robinson pled guilty to the offense and was sentenced to 365 days in the Marion County Jail, with 361 days suspended to probation.

On September 30, 2010, Robinson was arrested after Latonia Green called police and reported that Robinson had beaten and choked her. At the time, Green was living with Robinson and their one-year-old son. Green related her story to the investigating officer, Lawrence Police Officer Brian Sharp, who then related her story to Lawrence Police Detective Thomas Zentz, who subsequently related the story in the probable cause affidavit. The State charged Robinson with two counts of

domestic battery,[1] one count of strangulation,[2] and one count of battery.[3]

During a period from October 2010, to December 2010, the State filed a notice and three amended notices of probation violation in which it alleged numerous violations of probation. The State alleged that Robinson violated his probation when he "was arrested and charged on 9/30/10 with Domestic Battery (FD), Strangulation (FD), Domestic Battery (MA), and Battery (MA)." (Robinson's App. 36). The State also alleged that Robinson failed to (1) comply with anger control counseling; (2) engage in his court-ordered community service work; (3) obtain full-time employment; and (4) report to the Drug Lab on numerous occasions.

The probation revocation hearing was bifurcated. At the beginning of the first probation revocation hearing, the State called the court-assigned probation officer. The probation officer identified the informations and the probable cause affidavit relating to Robinson's September 30, 2010 arrest, and the State moved to admit the documents. Robinson objected to the admission of the documents on the grounds that their admission would violate his right to confront witnesses and that the statements in the probable cause affidavit constitute unreliable multiple hearsay. The trial court adjourned the hearing to allow the parties to submit memoranda regarding Robinson's objection.

In the probable cause affidavit at issue, Detective Zentz first swears and affirms that "he believes and has good cause to believe as a result of his investigation that he learned from reliable persons that the [facts concerning the offenses] occurred[.] . . ." (State's Ex. 5). The affidavit then describes the statements made by Green

to Officer Sharp about the events of September 30, 2010. Detective Zentz states that Green told Officer Sharp that Robinson became angry and pushed her against a wall, squeezed her throat until she couldn't breathe and fell to the ground, struck her in the back of the head, and pushed her so that she and her son could not leave the apartment. Detective Zentz also states that Green told Officer Sharp that when Robinson hit her in the back of the head, "she landed on her elbows in the bedroom on the carpet." *Id.* The affidavit states that Green had "an abrasion on her left elbow that she stated was causing pain from that fall." *Id.* Detective Zentz signed the probable cause affidavit following the statement that "I swear or affirm under the penalties for perjury that the above facts are true to the best of my knowledge and belief and that I learned these facts from another law enforcement officer." *Id.*

After reviewing the parties' legal memoranda, the trial court, in a second probation revocation hearing, made the following statement in support of its denial of Robinson's prior objections to the admission into evidence of the probable cause affidavit:

> Okay. I do believe I understand each of your points, and I think that every case is very case specific. So what I am going to say on this particular case and this particular probable cause affidavit when I am reviewing it and reading it that there are other indicia of reliability when the officer says, you know, this person complained of having some sort of battery or an abrasion, or whatever. [A]ll the problems in here—that he did actually see them. He said that she had an abrasion on her left elbow. So he is

1. Ind.Code § 35–42–2–1.3.

2. I.C. § 35–42–2–9.

3. I.C. § 35–42–2–1.

viewing a lot of these things as the person who says it happened is corroborating it by viewing it himself. And the person who is reporting this, is subject to being charged with false reporting for making something up, so it's not like it's an anonymous person.

So in addition we find and arrest people for probable cause similar to this, these kinds of affidavits and subject to their arrest, take them into custody, take their liberty away every day based on this exact kind of information. And so, based on that, I'm finding it reliable for probable cause for a probable cause of the new arrest and probation violation. Again, the Rules of Evidence are greatly relaxed and the burden of proof is also much less than in a criminal case.

(Tr. 33–34). (Paragraph division added).

Subsequent to the admission of the probable cause affidavit, Robinson's probation officer testified to the remaining alleged violations. At no time during either hearing did Detective Zentz, Officer Sharp, or Green testify about the contents of the probable cause affidavit. At the conclusion of the hearing, the trial court found that Robinson violated probation for the following reasons: (1) the arrest for the September 30, 2010 offenses; (2) failure to comply with anger control counseling; and (3) failure on three occasions to report for drug testing. The trial court then placed Robinson on home detention for thirty days.

### DECISION

 Robinson contends, and we agree, that the trial court abused its discretion in admitting the probable cause affidavit because it contains multiple levels of hearsay and is thus unreliable evidence. The State argues that this issue is moot because even if Robinson prevails, this court cannot render effective relief by restoring his freedom for the thirty days he has already served on home detention. However, our courts "have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of 'great public interest.' " *C.T.S. v. State,* 781 N.E.2d 1193, 1198 (Ind.Ct.App.2003) (quoting *R.A. v. State,* 770 N.E.2d 376, 378 (Ind.Ct.App.2002), *trans. denied* ). Issues likely to recur generally fall within the public interest exception. *Id.* This issue is one that is likely to recur, and therefore, we will address this issue on its merits.[4]

 Probation is a matter of grace, not a right to which a criminal defendant is entitled. *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind.2007). Thus, the trial court's decision to admit or exclude evidence in a probation revocation hearing is reviewed on appeal for an abuse of discretion. *Figures v. State,* 920 N.E.2d 267, 271 (Ind.Ct. App.2010). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

 The United States Supreme Court has held that the Due Process Clause applies to probation revocation hearings. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973) (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The due process rights of a probationer include: "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and pres-

---

4. The State argues that this court's "prior jurisprudence in this area is equal to the task of deciding the issue in question and, therefore, this appeal should be dismissed." State's Br. at 5. As our discussion below indicates, our prior cases do not directly address the particular facts and circumstances found in this case.

ent evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body. . . ." *Cox v. State*, 706 N.E.2d 547, 549 (Ind.1999).

Robinson contends that the State's admission of the probable cause affidavit violated his right to confront and cross-examine witnesses. Confrontation rights in the context of probation revocation are not as extensive as they are in criminal trials. *Reyes v. State*, 868 N.E.2d 438, 440 (Ind.2007). The Indiana Rules of Evidence, including those governing hearsay, do not apply in such proceedings. *See* Ind. Evidence Rule 101(c)(2). Additionally, the scope of the right to confrontation as defined in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply in such proceedings. *See Reyes*, 868 N.E.2d at 440 n. 1. However, this "does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Id.* at 440. Nonetheless, due process does not prohibit the use " 'where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.' " *Id.* (quoting *Gagnon*, 93 S.Ct. at 1760 n. 5).

In order to admit hearsay evidence at a probation revocation hearing in lieu of live testimony, the State must demonstrate "good cause" for utilizing the hearsay. *Id.* This requirement is met so long as the hearsay bears substantial guarantees of trustworthiness. *Id.* at 441. This substantial trustworthiness satisfies the need for flexibility in routine probation revocation hearings. *Id.* at 441–42. The "substantial trustworthiness test" requires that the trial court evaluate the reliability of the hearsay evidence. *Id.* at 442. Ideally, the trial court should explain on the record why the hearsay is reliable and why that reliability is substantial enough to supply good cause for not producing live witnesses." *Id.* (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir.2006)).

In *Whatley v. State*, 847 N.E.2d 1007, 1010 (Ind.Ct.App.2006), we held that a probable cause affidavit prepared and signed by the officer listed as the affiant generally bears sufficient indicia of reliability to be introduced into evidence at probation revocation hearings. Indeed, we held that a sufficiently reliable probable cause affidavit may, by itself, be sufficient to support a finding that a probationer has committed another crime in violation of his or her terms of probation. *Id.* However, even before the substantial trustworthiness test was adopted in *Reyes*, we held that a probable cause affidavit that was not prepared and signed by the officer who was listed as the affiant did not bear substantial indicia of reliability, and therefore, the trial court erred in admitting it into evidence at a revocation hearing. *See Baxter v. State*, 774 N.E.2d 1037, 1044 (Ind.Ct.App.2002), *trans. denied.* After *Reyes*, we held that the trial court erred in admitting a probable cause affidavit where the trial court did not explain on the record why it considered the affidavit substantially trustworthy, the State did not present any evidence to corroborate the matters asserted therein, and the charges pertaining to the offenses described in the affidavit had been dismissed. *Figures*, 920 N.E.2d at 272 (citing *Tate v. State*, 835 N.E.2d 499, 509 (Ind.Ct.App.2005), *trans. denied*, for the proposition that probable cause affidavits "pose a risk of unreliability that the hearsay rule is designed to protect against").

In *Whatley*, the affiant stated in the probable cause affidavit the facts surrounding the investigation that he conducted. Here, however, Detective Zentz stated the facts as told by Green to Officer Sharp and then relayed to Detective Zentz. In *Mateyko v. State*, 901 N.E.2d

554 (Ind.Ct.App.2009), we considered a similar case where a witness testified as to what Mateyko's probation officer told her regarding what Mateyko's therapist told the probation officer about the incident that constituted the alleged violation. We held that Mateyko at least established *prima facie* error [5] by the trial court in allowing the witness' "triple-hearsay" testimony. *Id.* at 559. In so holding, we emphasized that the State relied solely upon the testimony of a witness who "had no direct involvement with Mateyko or the events which the State alleged constituted a violation of the terms of probation. Indeed, [the witness] was removed by several steps from the events at issue." *Id.* We also emphasized that the trial court did not explain "why hearsay within hearsay within hearsay" was reliable or why "any reliability was substantial enough to support good cause for not producing a live witness." *Id.*

In the present case, the State emphasizes the trial court's stated reasons in support of the admission of the multiple hearsay probable cause affidavit. The fact remains that Detective Zentz, the affiant, neither observed the abrasion on Green's elbow nor any other fact or circumstance of the alleged attack upon Green. Furthermore, the unsworn statement given to Detective Zentz about the abrasion is less than definitive. Officer Sharp merely states that there was an abrasion on Green's elbow "that she stated was causing pain from the fall." (State's Ex. 5).

We see the first paragraph of the trial court's statement as a reference to the validity of a non-existent affidavit signed by Officer Sharp who, as the investigating officer, was directly involved in the arrest and the interview of Green. The trial

court's statement did not explain why an affidavit by Detective Zentz, which was full of hearsay within hearsay within hearsay, was reliable.

Furthermore, we see the second paragraph of the trial court's statement as an inexact and incorrect comparison of an arrest to a revocation of probation. The former involves temporary incarceration before a hearing where the defendant is afforded the full panoply of due process rights. The latter, however, involves potential long term incarceration based on hearsay. That hearsay should be substantially reliable.

We cannot say under the facts and circumstances of this case that the probable cause affidavit was substantially reliable. Accordingly, the trial court erred in admitting the affidavit. We note, however, that the State presented and the trial court found that there were additional factors warranting revocation of Robinson's probation.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

**5.** The State did not address the issue on appeal, thus Mateyko's burden was to show *pri-* *ma facie* error. *Mateyko,* 901 N.E.2d at 557.